### RIKER v. GWYNNE et al.

(Supreme Court, Special Term, New York County. March 21, 1908.)

1. FRAUDULENT CONVEYANCES—PREFERENCES.

   One will be held to have had the right to take a conveyance for advances made by her to the grantor, however much he owed others, unless under Bankr. Act July 1, 1898, c. 541, § 60, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], the creditors sustain the burden of showing she knew the conveyance was intended as a preference.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 520.]

2. SAME—CONSIDERATION—INTENT—EVIDENCE.

   Evidence in an action to set aside a conveyance as fraudulent *held* insufficient to show it was for an inadequate consideration, or was made with intent to defraud creditors.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Fraudulent Conveyances, § 892–903.]

Action by Samuel Riker, Jr., as trustee in bankruptcy, against Helen S. Gwynne, as administratrix, and others. Dismissed.

Henry Necarsulmer, for plaintiff.
C. R. Waterbury, for defendants.

DAYTON, J, Action brought during 1906–07 to set aside conveyance of real estate for fraud upon creditors. February 8, 1901, Edward E. Gwynne and wife conveyed to Louise Gwynne, the mother

of Edward E. Gwynne, all his right, title and interest in the premises No. 3 East Eighty-Sixth street, Manhattan, for the expressed consideration of $10 and other valuable considerations, the deed being recorded March 20, 1901, having upon it canceled revenue stamps to the amount of $6. The premises so conveyed were subject to a life estate in William F. Gill, 57 years old, who is still living, with remainder over of one-half to the grantor, Edward E. Gwynne. November 4, 1901, Mrs. Louise Gwynne executed her will, making her son executor with power of disposition, in trust for his three children or the survivor of them. January 17, 1901, Mr. Greenberg, assignee of Mr. Reinach, of Paris, France, brought two actions against Edward E. Gwynne on notes of the latter. Mr. Gwynne withdrew his answers and judgments were entered September 18, 1901, for about $50,000. Executions were returned unsatisfied, and in June, 1902, Mr. Gwynne filed his voluntary petition in bankruptcy. Mrs. Louise Gwynne and her son were examined in supplementary proceedings December, 1901, and January, 1902. Mrs. Gwynne died in May, 1902, and Edward, her son, in May, 1904. The testimony of the attorney for the judgment creditor was that in the latter part of 1900 Mr. Gwynne stated his inability to pay the claim of Reinach. On all the facts it may be assumed that Mr. Gwynne was insolvent at the time of the conveyance to his mother.

The question is whether it was made for an adequately valuable consideration, and, if not, whether the grantee knew that it was made with intent to defraud the creditors of the grantor. Mrs. Louise Gwynne testified in the supplementary proceedings, offered in evidence by the plaintiff, that the consideration was $6,000 advanced by her to her son. This is sought to be met by proof that as executrix of her husband's will she paid to her son during 1900 about $5,500 out of certain trust funds; but her testimony is, further, that for a considerable period she had advanced to him or to his wife for their joint support $400 per month out of her own funds. The testimony of Mr. Gwynne in the supplementary proceedings in evidence on plaintiff's behalf states:

"I can say that my mother gives me $4,000 or $5,000 per year, but it is altogether discretionary with her. * * * If I did transfer anything, it was not to avoid these proceedings, nor do I recollect the dates. If such transfer was made, the consideration I received therefor was more than double my interest in said property was worth. I think the total sum I received therefor was about $1,200 or $1,500."

There was conflicting testimony given in the bankruptcy proceedings on this subject. The burden was on the plaintiff to establish that there was no consideration, or its patent inadequacy and an intent to defraud. He introduced proof of the conveyance of some Staten Island real estate on January 8, 1901, as to which Mr. Gwynne testified:

"It was an interest in three cheap houses and lots—rents $10 to $20 per month. My interest was derived by reason of a void devise in my father's will. * * * Said property was sold by my mother for between $2,500 and $3,000."

This property was subject to the right of dower of Mrs. Louise Gwynne. Plaintiff introduced evidence to show that the value of the remainder of the one-half in the Eighty-Sixth street property, subject to the life estate in the entire estate, was about $15,000. The

problem demonstrated to that effect by the expert does not convince me that said sum could be realized either at public or private sale. It seems to me that a sum less than $6,000 was at the time of the conveyance, and now fully adequate for that one-half interest, subject to a life estate in premises yielding a gross rental of only $1,100, even though the fee of all the premises be regarded at a valuation of about $40,000. The witness Appleton, for the plaintiff, hostile to the defendants, said that Mrs. Gwynne spoke of loans to her son and that she was tired of giving him any more money; further, that Mrs. Gwynne said she took the conveyance to save her son from his creditors, but said nothing about saving herself, and did not mention the amount of her loans to her son. The motives and credibility of this witness were successfully attacked on cross-examination and by the testimony of Mr. Turner.

The conclusion is irresistible that Edward E. Gwynne had extravagant tastes, expended money lavishly, and was without business employment. He may have had large expectancies, but seems to have been a drain upon his mother's financial resources. She had a right to take the conveyance for moneys advanced by her no matter how much he owed to other persons, unless under section 60 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), plaintiff could have sustained the burden of showing that Mrs. Gwynne knew that the conveyance was intended as a preference. Fraud is not to be presumed, but must be proved prima facie, not necessarily by direct proof. Circumstances may be availed of. Plaintiff's evidence has failed to satisfy me that Edward E. Gwynne was not indebted to his mother at the time of his conveyance to her or that the conveyance was for an inadequate consideration, or that it was made with intent to defraud creditors. I incline to the contrary opinion. Applying to the record here the principles stated in Auburn Exchange Bank v. Fitch, 48 Barb. 344, which, so far as I am aware, have not been reversed or questioned, I am of opinion that the complaint should be dismissed upon the merits, with costs.

Submit findings and form of judgment on notice.